STATE OF CONNECTICUT *v.* EARL WILLIAMS, JR.
(7142)

O'CONNELL, STOUGHTON and FOTI, Js.

Argued September 21—decision released November 21, 1989

*Susan M. Hankins,* assistant public defender, for the appellant (defendant).

*Geoffrey E. Marion,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Roland D. Fasano,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crimes of sexual assault in the second degree, General Statutes § 53a-71 (a) (1),[1] and risk of injury to a child, General Statutes § 53-21.[2] The defendant claims that the trial court erred (1) in failing to give an adverse inference charge when the state failed to call the victim's nine year old sister as a witness, and (2) in precluding the defendant from asking the ten year old victim, in the presence of the jury, if she had engaged in any other sexual activity within seventy-two hours prior to the incident. We find no error.

The jury could have reasonably found the following facts. The defendant and his companion, Gina Barnes, lived in Meriden with their five daughters. The victim,

---

[1] General Statutes § 53a-71 provides in part: "SEXUAL ASSAULT IN THE SECOND DEGREE. . . . (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

[2] "[General Statutes] Sec. 53-21. INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

B, the eldest of the daughters, was ten years old during the summer of 1987. In the early morning hours of August 1, 1987, Barnes left the defendant in charge of four of their five daughters while she and the youngest child traveled to New York. The four older girls were sleeping when she left the apartment. Shortly after Barnes left, the defendant awakened B, who shared a bed with her nine year old sister, A, and told B he wanted her to go out for some milk. After the victim was up and out of bed, the defendant told her to go into her mother's bedroom, take off her clothes and get onto the bed. Because the defendant had a belt and B was frightened, she complied with the defendant's commands. While B was on the bed, the defendant sexually assaulted her. After the assault, the defendant told B to wash up. She went into the bathroom, and put her clothes back on without washing herself. After leaving the bathroom, B returned to her bedroom, woke up A, and told her what the defendant had done. B then called her cousin, Cynthia Hudson, and repeated the allegations to both Hudson and Hudson's friend, Laura Brockman.

Hudson and Brockman went to the Meriden police station and reported the incident to Officer Robert Hettrick. The women then accompanied Hettrick to the defendant's home. B again related the incident to Hudson, Brockman and Hettrick. The officer took B to the emergency room where she gave additional statements to Officer Marsha Anderson and to Mary Nicholas, a physician. A physical examination revealed the presence of spermatozoa in the vaginal vault. Seminal fluid was found on the shorts and underpants B wore before and after the sexual assault.

The defendant first claims that the trial court erred in failing to give a missing witness, or *Secondino*

charge, when the state failed to call A, who was the first person to see the victim after the assault. We do not agree.

Whether an absent witness has superior or peculiar information and whether an adverse inference can be drawn is a question of fact for the trier. *Perl* v. *Case,* 3 Conn. App. 111, 115, 485 A.2d 1331 (1985). This court cannot reverse or modify the trial court's determinations of fact unless they are clearly erroneous. *Buddenhagen* v. *Luque,* 10 Conn. App. 41, 44, 521 A.2d 221 (1987). We cannot reach such a conclusion here.

A negative inference may be drawn if a party fails to produce a witness who (1) is within his power to produce, and (2) would naturally have been produced by him. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960); *Chomko* v. *Patmon,* 19 Conn. App. 483, 488, 563 A.2d 311 (1989). The defendant's allegations fail to meet the second prong of this test.

"A witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." *Secondino* v. *New Haven Gas Co.,* supra. A prospective witness whose testimony would be comparatively unimportant, cumulative or inferior to what has been offered, should be dispensed with on the grounds of expense and inconvenience, without the need for an adverse inference charge. *State* v. *Adams,* 14 Conn. App. 119, 129, 539 A.2d 1022 (1988).

Putting A on the stand would have served no purpose. First, A would not have been able to testify directly as to the facts of the crime. She was not an eyewitness to the offense. She was asleep when the sexual assault took place and learned of the incident from

the victim only after the fact. Moreover, A's testimony would not have added "peculiar or superior information" over that provided by other witnesses.

In addition, the state asserts that A's testimony would have been no more than additional constancy of accusation evidence.[3] In light of the fact that five adults testified in this capacity, the trial court's determination that it was unnecessary for the jury to hear the testimony of this child before a verdict could be reached was well grounded. B related the same events to A that she did to Hudson, Hettrick, Anderson, Nicholas and her mother. After B testified at trial, each of these adults took the stand and told the court the details B had related to them. Each of these witnesses verified that B consistently named the defendant as her assailant. Because there is no need to give a *Secondino* charge for a witness whose testimony would have been no more than cumulative, we conclude that the trial court did not err in refusing to give a missing witness charge as to the state's failure to produce A.

The defendant's final claim is that the trial court violated his sixth and fourteenth amendment rights to confrontation and due process when it precluded the defendant from asking the ten year old victim, in the presence of the jury, if she had engaged in any other sexual activity within the preceding seventy-two hours of the alleged assault. We disagree.

---

[3] The constancy of accusation exception has been defined as follows. "In sex-related cases witnesses to whom the complainant has related the particulars of the incident are permitted to recount the details of the statement . . . provided that the complainant first testifies concerning the offense . . . and also identifies the persons to whom she made the statement. . . . The statement is admissible as an exception to the hearsay rule to corroborate the complainant's testimony by showing constancy of accusation." (Citations omitted.) *State* v. *Ouellette*, 190 Conn. 84, 97, 459 A.2d 1005 (1983); see also *State* v. *Velez*, 17 Conn. App. 186, 189, 551 A.2d 421 (1988), cert. denied, 210 Conn. 810, 556 A.2d 610 (1989).

Prior to trial the defendant moved, pursuant to General Statutes § 54-86f,[4] the Rape Victim's Shield Law, to offer evidence of the ten year old victim's prior sexual conduct. The court conducted a hearing outside the presence of the jury and determined that "there was not the slightest scintilla of anything produced, even by the [defendant], that's going to allow this court to let that kid get on the witness box and have you, with all due respect, throw mud on her."

General Statutes § 54-86f greatly restricts the admissibility of evidence of the prior sexual conduct of a sexual assault victim. *State* v. *Rothenberg,* 195 Conn. 253, 259–60, 487 A.2d 545 (1985). Testimony as to the sexual history of a victim is not admissible unless the proposed evidence satisfies one of the exceptions to the statute's proscription. *State* v. *Butler,* 11 Conn. App.

---

[4] "[General Statutes] Sec. 54-86f. ADMISSIBILITY OF EVIDENCE OF PRIOR SEXUAL CONDUCT. In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

673, 681, 529 A.2d 219, cert. denied, 205 Conn. 806, 531 A.2d 938 (1987). Once this claim is made, the statute provides for a hearing to determine whether the probative value of the evidence outweighs the prejudicial effect on the victim. If this threshold question cannot be answered in favor of the defendant, his constitutional rights to due process and confrontation are not violated by the court's restriction of the questions he may pose to the victim before the jury.

In his pretrial motion, the defendant relied upon the statute's first exception, which provides that no evidence of the victim's prior sexual conduct shall be admissible unless it is "offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury." At the pretrial hearing the defendant called two witnesses, B and her mother, Gina Barnes. He then testified himself. B stated that her father raped her and that he was the only possible source of the semen found within her. She also testified that she had no other sexual relations during the period of July 28 through August 1, 1987.

Barnes stated that she and the defendant never discussed whether B was sexually active, that she believed H, the man the defendant claimed was the source of the semen, was in jail at the time of the incident, that H never lived in her home, and that she was not aware of the victim's being sexually involved with anyone around the time of the incident.

The defendant was the last witness at the pretrial hearing. On direct examination he testified that he was not the source of the semen, that H had lived with them in the past, that he and Barnes were aware that the victim was sexually active with H[5] at the end of July,

[5] Although the defendant testified at trial that he was sure the victim was sexually active with H, his brief makes no mention of H's culpability but states instead that the most likely alternative suspect would be Barnes' brother.

1987, and that he and Barnes discussed these matters. On cross-examination the defendant testified that H did not live with the family at the time of the incident, that he had not seen H since January, 1987, and that he was alone with his daughters on the morning of August 1, 1987.

After review of the defendant's tenuous allegations, we conclude that the trial court rightfully refused to allow the defendant to ask the victim if she had been sexually active during the three days prior to the incident. Repetition of the denials of both B and Barnes in front of the jury would have had no probative value and could have greatly prejudiced the victim.

This court has determined that the rape shield statute serves a number of public policies, including, but not limited to, protecting the victim's sexual privacy, shielding her from undue harassment, enabling her to testify in court with less fear of embarrassment, avoiding prejudice to the victim, avoiding jury confusion and avoiding lost time on collateral matters. *State* v. *Cassidy*, 3 Conn. App. 374, 379, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985). In light of the fact that the defendant's brief concedes that B only would have denied the allegations again if she were allowed to testify in front of the jury, it is difficult to perceive any justification for breaking down the barriers of the rape shield statute except to harass and embarrass B and confuse or mislead the jury. The trial court did not err in excluding this evidence.

There is no error.

In this opinion the other judges concurred.