STATE OF CONNECTICUT *v.* DONALD SCOTT
(7735)

DALY, NORCOTT and FOTI, Js.

Argued October 18, 1989—decision released January 23, 1990

*Leopold P. DeFusco,* special public defender, for the appellant (defendant).

*Donald A. Browne,* state's attorney, with whom, on the brief, was *Stephen J. Sedensky III,* for the appellee (state).

FOTI, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of the crimes of robbery in the third degree in violation of General Statutes § 53a-136[1] and larceny in the second degree in violation of General Statutes §§ 53a-119 and 53a-123 (a) (3). The defendant claims that the trial court erred (1) in instructing the jury concerning the elements of the robbery, and (2) in failing to give an adverse inference charge when the state did not call a witness. We find no error.

---

[1] The defendant was charged by amended information with robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), but was found guilty of the lesser included offense of robbery in the third degree.

After hearing the testimony of three witnesses, the jury could reasonably have found the following facts. On August 6, 1987, at approximately 9:15 p.m., the victim exited the Stop & Shop supermarket in Fairfield with her ten year old daughter. As she was leaving the store, the victim was pushing a cart of groceries with both hands on the cart's handle and her pocketbook hanging from her wrist. Suddenly, she felt a sharp pull at her pocketbook. The tugging was strong enough to pull both the victim and her cart of groceries to the ground. The victim resisted the purse snatcher as long as she was able by crooking her wrist to retain possession of the purse. She was dragged along the pavement with sufficient force to cause two fractures in her left wrist, a bruise on her right thigh and abrasions on the front of her knees and on the palm of her right hand. She finally released the bag to the assailant, a black man, who ran away with it. She did not get a good look at him.

Fearing for her mother's safety, the victim's ten year old daughter became hysterical during the purse snatch. She remained so distraught after the incident that she was unable to participate in the identification of her mother's assailant.

On the same date, moments before the purse snatching, another shopper, P, had handed a shopping cart to a black man in front of the Stop & Shop. Just as P was about to enter the store, he heard a scream, turned and saw the man to whom he had just handed the cart struggling with the victim and finally obtaining her purse. P pursued the purse snatcher around the side of the building and watched him get into the passenger side of a small car. The driver and the purse snatcher immediately drove away. One week later, after viewing a photographic array at the Fairfield police station, P identified the defendant as the man he had seen steal the victim's pocketbook and flee.

D, a friend of the defendant's, drove him to the Fairfield Stop & Shop on the day of the incident between 9 and 10 p.m. in order for the defendant to obtain some money from a relative. D dropped the defendant off in front of the store and drove to the side of the building to wait for him. In a short time, the defendant returned to D's car with something under his shirt. D later noticed that the object under the defendant's shirt was a pocketbook.

The defendant first claims that the court erred in its jury instruction on the elements of the offense of robbery by including subdivision (2) of § 53a-133[2] of the General Statutes in its definition of robbery.[3] He contends that the evidence offered by the state was sufficient only to establish guilt under subdivision (1) of that statute. In the alternative, the defendant argues that if the evidence presented was sufficient to support a finding that force was used to compel the victim to deliver up the purse, then the instruction was erroneous in that subdivisions (1) and (2) of the robbery statute are conceptually distinct and require a unanimity charge. We cannot agree with either claim.

The defendant first asserts that there was insufficient evidence presented at trial to prove the essential elements of robbery, that is, that the actor used or threatened "the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcom-

---

[2] General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[3] Although the defendant did not except to this portion of the court's charges to the jury at the trial, "a claim that the judge improperly instructed the jury on an element of an offense is appealable even if not raised at trial." *State* v. *Williams*, 202 Conn. 349, 363, 521 A.2d 150 (1987).

ing resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner . . . to deliver up the property . . . . " General Statutes § 53a-133.

Our Supreme Court has stated that " '[w]here a person may have been convicted under more than one statutory alternative, the judgment cannot be supported unless the evidence was sufficient to establish guilt under each statutory provision which the trier may have relied upon.' " *State* v. *John,* 210 Conn. 652, 687–88, 557 A.2d 93, cert. denied,     U.S.    , 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989); quoting *State* v. *Marino,* 190 Conn. 639, 650–51, 462 A.2d 1021 (1983). "This rule is based on the principle that jurors are presumed to follow the instructions given by the judge." *State* v. *Williams,* 202 Conn. 349, 363–64, 521 A.2d 150 (1987).

The defendant argues that the facts in the present case are strikingly similar in all relevant respects to those in *State* v. *Williams,* supra, and, therefore, that he should be granted a new trial as was the defendant in *Williams.* In *Williams,* however, the state conceded that the evidence was not sufficient to sustain a conviction under the second subdivision of § 53a-133. In the present case, the state makes no such concession.

Here, in striking contrast to *Williams,* the state presented evidence at trial to show that the defendant tugged so hard at the victim's purse strap that it caused her to fall to the pavement. This evidence was sufficient for a reasonable jury to conclude that physical force was used to overcome her resistance to the taking of her purse. In addition, the state presented ample evidence to show that the defendant dragged the victim along the pavement before she finally released her purse to him. The jury could reasonably have concluded from this that the defendant used physical force to com-

pel the victim to deliver up her property. Since the evidence submitted at trial was clearly sufficient to establish that the defendant overcame the victim's resistance to the purse snatch, and that the victim was forced to deliver up her pocketbook, as required by subdivisions (1) and (2) of General Statutes § 53a-133, the trial court did not err in instructing on both statutory alternatives. *State* v. *John,* supra, 688–89.

The defendant also claims that because the jury may have disagreed on the manner in which the offense was committed, his right to a unanimous verdict was violated by the court's failure to instruct the jury that it had to agree unanimously as to which of the statutory alternatives was the factual predicate for the offense. The defendant's conclusion is premised on his claim that subdivisions (1) and (2) of the robbery statute are conceptually distinct. We cannot agree.

Because the defendant neither filed a request to charge nor excepted to the charge as given, we limit our review initially to determining whether the record supports his claim. *State* v. *Golding,* 213 Conn. 233, 239, 567 A.2d 823 (1989); *State* v. *Horne,* 19 Conn. App. 111, 136, 562 A.2d 43 (1989).

A specific unanimity charge is required only "if two conditions are met: (1) the alternative acts are *conceptually distinct* from each other; *and* (2) the state has presented *supporting evidence* on each alternative act." *State* v. *Bailey,* 209 Conn. 322, 334, 551 A.2d 1206 (1988); see also *State* v. *Anderson,* 211 Conn. 18, 34, 557 A.2d 917 (1989); *State* v. *Reyes,* 19 Conn. App. 695, 705, 564 A.2d 309 (1989). In the case before us, the defendant's claim must fail because the statute in question does not satisfy the first *Bailey* condition.

Contrary to the defendant's assertion, "[b]oth subdivisions (1) and (2) of General Statutes § 53a-133 refer to the defendant's purpose in using or threatening force. Subdivision (1) refers to his purpose of using or

threatening force to prevent or overcome resistance to the taking of the property, or to its retention immediately after the taking. Subdivision (2) refers to his purpose of using or threatening force to compel the owner to deliver up property or otherwise to aid in the larceny." *State* v. *Horne,* supra. Where, as here, both states of mind involved an intent to force or intimidate the victim to yield her property so as to permit its taking or retention by the defendant, these two states of mind are hardly conceptually distinct. See id.

We conclude that the record does not support the defendant's claim of a conceptual distinction herein and, therefore, no further review is warranted.

The defendant's final claim is that the trial court erred in failing to give a missing witness, or *Secondino,*[4] charge when the state failed to call the victim's daughter as a witness.

The facts pertinent to the claim are not in dispute. The victim's ten year old daughter was present when the incident happened. The child was hysterical and was screaming during the robbery and her parents would not permit her to participate in any identification procedure after the incident. The victim did not know whether her daughter had seen the person because the family did not discuss the situation very much thereafter. The daughter remained distraught after the incident and was under the care of a doctor because of it.

"Whether an absent witness has superior or peculiar information and whether an adverse inference can be drawn is a [preliminary] question of fact for the trier. *Perl* v. *Case,* 3 Conn. App. 111, 115, 485 A.2d 1331

---

[4] In *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 674–76, 165 A.2d 598 (1960), our Supreme Court held that a negative inference may be drawn when a party fails to produce a witness who is within his power to produce and would naturally have been produced by him. See *State* v. *Williams,* 20 Conn. App. 263, 266, 565 A.2d 1365 (1989).

(1985). This court cannot reverse or modify the trial court's determinations of fact unless they are clearly erroneous. *Buddenhagen* v. *Luque,* 10 Conn. App. 41, 44, 521 A.2d 221 (1987)." *State* v. *Williams,* 20 Conn. App. 263, 266, 565 A.2d 1365 (1989). A negative inference may be drawn if a party fails to produce a witness who is available and would naturally have been produced by him. *State* v. *Wood,* 208 Conn. 125, 140, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988).

There is no question here that the victim's daughter was available, but because her testimony would most likely have added nothing to the evidence already admitted, and because of the obvious psychological impact the incident had upon her, combined with her young age, the state chose not to call her as a witness. Further, the question of identity was the only contested issue at trial. Since three adults, namely, the victim, P and D, testified as to identity, this child's testimony would have been no more than cumulative. It must also be noted that had the defendant wanted the child to testify it would have been as natural for him to produce this known and available witness as for the state to have done so. See *State* v. *Brown,* 169 Conn. 692, 705, 364 A.2d 186 (1975). Since the defendant made no effort to call the child as a defense witness, we must conclude that this decision was made as part of a defense trial strategy.

In light of the above, we hold that a reasonable and satisfactory explanation was given for the state's failure to produce the victim's ten year old daughter as a witness and we conclude that the record supports the court's refusal to give a missing witness charge to the jury.

There is no error.

In this opinion the other judges concurred.