## State of Connecticut *v.* Paul S. Sherbacow
## (7097)

Spallone, Foti and Lavery, Js.

Argued January 18—decision released May 15, 1990

*F. Mac Buckley,* for the appellant (defendant).

*Susann E. Gill,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Herbert Appleton,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, following a court trial, for the sale of cocaine by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b).[1] The defendant claims that the court erred (1) in denying his motion for judgment of acquittal, (2) in denying his motion for a new trial, (3) in failing to give him the benefit of an adverse inference, (4) in failing to find a violation of the court's sequestration order, and (5) in failing to perform an in camera review of claimed exculpatory material, and consequently denying his motion for sanctions. We find no error.

The court, prior to rendering its judgment, placed an oral memorandum of decision on record,[2] and concluded that the state had sustained its burden of proof

---

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[2] The oral memorandum of decision consists of a twenty-two page transcription.

as to the guilt of the defendant as charged. The court found that on November 18, 1986, Thomas Cardillo, a known drug trafficker, flew from Tampa, Florida, to Bradley Airport in order to collect money due him from Charles Kehoe, a Hartford drug dealer who had purchased cocaine from Cardillo on prior occasions. There had been an ongoing arrangement between them that Cardillo would supply Kehoe with cocaine on consignment and Kehoe would pay Cardillo when he had the money. When he arrived from Florida, Cardillo had no baggage but brought a change of clothes in a plastic bag. Both Cardillo and Kehoe were under surveillance by members of the statewide narcotics task force from the time of Cardillo's arrival at Bradley Airport until his departure the following day.

Cardillo and Kehoe met at a Hartford restaurant and then went to Kehoe's house. Kehoe intended to pay Cardillo for prior cocaine deliveries and to get more cocaine from him that day. At Kehoe's house, Kehoe gave Cardillo at least $15,000 and possibly as much as $25,000. Cardillo placed the money in a plastic bag. While at Kehoe's house, Cardillo called the defendant, who told him that everything was all set, that Cardillo should come to his house at 7 p.m. that evening, and that he should come alone. At approximately 6 p.m., Cardillo and Kehoe left in Kehoe's car with the plastic bag containing the money. The pair drove to Avon where Kehoe was dropped off at a restaurant. Cardillo then drove to the defendant's house in Simsbury. He arrived there at 7:02 p.m., parked in the driveway, and entered the defendant's residence.

The defendant and Cardillo took two packages of cocaine to the basement where they weighed them. One package was found to weigh 300 grams and the other, 200 grams. Cardillo paid the defendant approximately $16,000 for the 500 grams of cocaine. He informed the

defendant that he did not want to drive back to the restaurant to pick up Kehoe with the cocaine in the car because he had been drinking, the car's front end was damaged and he was afraid that he would be stopped and searched.

The defendant accommodated Cardillo by putting the cocaine in a fishing tackle box, placing the box in the trunk of his car, and following Cardillo back to Avon. Cardillo and the defendant left the defendant's house at 7:51 p.m. The defendant drove his own car and Cardillo drove Kehoe's vehicle. At about 7:55 p.m., they arrived at a parking area adjacent to the restaurant where Kehoe had been dropped off. The defendant and Cardillo exited their automobiles and opened the trunks of the two cars. The defendant took a package out of his trunk and placed it in the trunk of Kehoe's vehicle. Both trunks were then closed and the defendant and Cardillo spoke for a few minutes. The defendant then hugged Cardillo and drove off.

Cardillo entered the restaurant and had a drink with Kehoe, after which they both returned to Kehoe's house where they weighed the cocaine.

On December 11, 1986, law enforcement officers, acting pursuant to a warrant, searched Kehoe's house. They discovered approximately 5.1 ounces of cocaine and $6745 in cash. Kehoe identified that cocaine as the remainder of the cocaine purchased from Cardillo on November 18, 1986.

I

The defendant first claims that the court erred in denying his motion for a judgment of acquittal because the evidence was insufficient to sustain the court's findings that the essential elements of identity and sale were proven beyond a reasonable doubt.

When a claim of insufficiency of evidence is made, the reviewing court must examine the record employing a standard of whether the trier of fact could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Messier,* 16 Conn. App. 455, 462, 549 A.2d 270, cert. denied, 209 Conn. 829, 552 A.2d 1216 (1988). As long as the evidence presented at trial was sufficient to allow the trier of fact to reasonably conclude that the state had met its burden of proof, the judgment will be affirmed. *State* v. *Wilson,* 17 Conn. App. 97, 99, 550 A.2d 21 (1988); *State* v. *Dumlao,* 3 Conn. App. 607, 613, 491 A.2d 404 (1985). "It is axiomatic that in reviewing a claim of insufficiency of the evidence [an appellate court] construes the evidence in the light most favorable to sustaining the jury's verdict and will affirm that verdict if it is reasonably supported by the evidence and the logical inferences drawn therefrom. *State* v. *Cobbs,* 203 Conn. 4, 7, 522 A.2d 1229 (1987); *State* v. *Cates,* 202 Conn. 615, 627, 522 A.2d 788 (1987). There is no legal distinction between direct and circumstantial evidence as far as probative force is concerned. *State* v. *Crump,* 201 Conn. 489, 495, 518 A.2d 378 (1986)." *State* v. *Walker,* 206 Conn. 300, 315–16, 537 A.2d 1021 (1988).

The state bore the burden of proving that the defendant sold a narcotic substance, cocaine, in violation of General Statutes § 21a-278 (b).[3]

---

[3] The state was not required to prove that the defendant was not a drug-dependent person at the time of the alleged offense, as the defendant presented no evidence of drug dependency, nor is the defendant making any such claim on appeal. See *State* v. *Januszewski,* 182 Conn. 142, 167, 438 A.2d 679 (1980), cert denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981).

The state's case was based substantially on the testimony of Cardillo, Kehoe and law enforcement officers assigned to the statewide narcotics task force who were on the surveillance team. Cardillo's testimony regarding the entire transaction with the defendant, if believed, established that on November 18, 1986, the defendant sold him approximately 500 grams of cocaine that were subsequently delivered to Kehoe. Portions of Cardillo's testimony were corroborated by the testimony of police officers who observed Cardillo going to the defendant's house, saw a package being placed in the trunk, and saw the defendant transferring the package to the trunk of Kehoe's car. Kehoe's testimony corroborated portions of Cardillo's testimony by showing that Cardillo borrowed Kehoe's car and left for approximately one and one-half hours. When Cardillo picked up Kehoe, the two men drove to Kehoe's house where, as Kehoe testified, Cardillo retrieved a package from the trunk of the car and brought it into the house where it was opened and the contents, approximately 500 grams of cocaine, were weighed. Portions of Kehoe's testimony were corroborated by police officers who had both him and Cardillo under observation. They testified that they observed Cardillo removing a package from Kehoe's trunk and bringing it into Kehoe's house. A few weeks later cocaine that proved to be 85.76 percent pure was seized from Kehoe's house. Kehoe testified that it was a portion of the cocaine that Cardillo had brought to him.

Whether Cardillo was inherently incredible or whether there were contradictions in Cardillo's testimony such that the trial court should have given no weight or less weight to that testimony than it did, were questions for that court, as trier of fact, to determine. "[W]e will not weigh the evidence nor resolve questions of credibility of witnesses, but will look to that evidence and the reasonable inferences therefrom which support

the findings of the trial court. *State* v. *Haddad,* 189 Conn. 383, 389, 456 A.2d 316 (1983). The conviction will be affirmed if from that viewpoint there is evidence from which the trier of fact could reasonably have inferred that the defendant was guilty beyond a reasonable doubt. *State* v. *Vincent,* 194 Conn. 198, 206, 479 A.2d 237 (1984)." *State* v. *Cobbs,* supra, 6-7. It is the "cumulative impact of a multitude of facts" that establishes guilt. *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984).

The trial court was free to believe some, all or none of Cardillo's testimony. Its function is to determine credibility and the effect to be given testimony. *State* v. *Grant,* 177 Conn. 140, 142, 411 A.2d 917 (1979). The court was fully aware of the serious drug charges facing Cardillo and that he was testifying in hope of receiving consideration. In its detailed and extensive oral memorandum of decision, the trial court reviewed the evidence and set forth its reasons in a thorough manner; it weighed the facts and gave credibility to Cardillo's testimony, thereby accepting it.

A trial court's findings of fact, while not conclusive, are entitled to great weight. *State* v. *Cobbs,* supra, 13. We conclude that the credible evidence in this case, as found by the trial court, is sufficient to establish the defendant's guilt beyond a reasonable doubt.

## II

The defendant next claims that the court erred in denying his motion for a new trial because the trial court applied an improper burden of proof and wrongly shifted that burden to the defendant. The defendant relies on two portions of the court's decision, the first that the court was "unable reasonably to draw from that evidence any conclusion or hypothesis consistent with the innocence of this accused," and the second,

the court's reliance on *Hill* v. *State,* 666 S.W.2d 130 (Tex. 1983), for the proposition that a defendant's unexplained presence at a crime scene can be used to corroborate the testimony of an accomplice. The defendant argues that the court diluted the state's burden to prove each essential element beyond a reasonable doubt, and placed a burden on the defendant to prove some fact, hypothesis or theory consistent with innocence. The court, however, properly stated the law in that portion of the transcript immediately preceding the court's statement to which the defendant excepts.[4] "To warrant a judgment of guilty the evidence must be such as to establish the guilt of the accused beyond a reasonable doubt, and any conclusion, reasonably to be drawn from the evidence, which is consistent with the innocence of the accused, must prevail." *State* v. *Guilfoyle,* 109 Conn. 124, 139, 145 A. 761 (1929).

The trier may not reach a conclusion of guilt where the facts, established by the evidence, including those reasonably and logically inferred from the other proven facts, are naturally consistent with the innocence of the accused. *State* v. *Morrill,* 193 Conn. 602, 610, 478 A.2d 994 (1984). A conclusion of guilt requires proof beyond a reasonable doubt, and proof to that extent is proof that precludes every reasonable hypothesis except that which it tends to support, and is consistent with the defendant's guilt and inconsistent with any other rational conclusion. Id.

---

[4] The memorandum of decision stated: "In the trial of criminal cases to the court, trial judges are subject to the same limitations, as to the determination of issues of fact, as a jury under similar circumstances. To warrant a judgment of guilty the evidence must be such as to establish the guilt of the accused beyond a reasonable doubt and any conclusion, reasonably to be drawn from the evidence, which is consistent with the innocence of the accused, must prevail. But the requirement of proof beyond a reasonable doubt does not mean that the proof must be beyond any possible doubt, and a possible hypothesis or supposition of innocence is a far different thing from a reasonable hypothesis."

The trial court quoted from *State* v. *Guilfoyle,* supra, to delineate the appropriate burden of proof, was aware of that case's reasoning, and correctly required the state to prove the essential elements of the crime charged beyond a reasonable doubt.

The defendant also claims that the court impermissibly shifted the burden of proof to the nontestifying defendant and expected him to prove his innocence as evidenced by the court's reliance on *Hill* v. *State,* supra. We do not agree.

The court stated in its oral memorandum of decision: "Where corroboration of accomplice testimony is required under state law sufficient corroboration may be furnished by the conduct of the accused such as being present at the scene, or in the company of an accomplice, when such conduct is coupled with suspicious circumstances such as the lack of an apparent reason for his presence. *Hill* v. *State,* [supra]." The defendant argues that this statement suggests that the trial court expected the defendant to testify on his own behalf and explain why he was there. Again, we do not agree.

The court, after reviewing the law regarding accomplice testimony, recognized that accomplice testimony comes before the trier under suspicious circumstances and noted the importance of corroboration in giving credibility to such testimony. Since the officers observed the defendant in the parking lot with Cardillo and saw him transfer a package from his trunk to the trunk of the car Cardillo was driving, the court cited *Hill* for the proposition that the defendant's presence there with a confessed criminal, coupled with the surrounding suspicious circumstances, could be used to corroborate that accomplice's version of events, if they were unexplained.

The court neither intended to shift, nor did it shift, the burden to the defendant, thereby requiring him to testify.

## III

The defendant next claims that the court erred in failing to give him the benefit of the rule of adverse inference for the state's failure to call Detective David Hutchinson of the Connecticut state police as a witness and also for its failure to call other officers to buttress a fellow officer's testimony.

First, the defendant argues that the state should have produced Hutchinson, a witness the state would naturally produce and who was available, as he was the key law enforcement officer in this investigation.

Hutchinson took a sworn statement from Cardillo in March, 1987, while Cardillo was being held in Florida, spoke with Kehoe on March 6, 1987, when Kehoe gave his deposition, interviewed both Cardillo and Kehoe prior to trial, authored a report on an October 21, 1986 surveillance of Cardillo in which the defendant was not observed, and was an affiant on the search warrants for both Kehoe's and the defendant's houses. Hutchinson did not participate, however, in the surveillance of Cardillo on November 18, 1986, the only incident in which the defendant was charged with selling drugs.

"Whether an absent witness has superior or peculiar information and whether an adverse inference can be drawn is a [preliminary] question of fact for the trier. . . . This court cannot reverse or modify the trial court's determinations of fact unless they are clearly erroneous. . . . A negative inference may be drawn if a party fails to produce a witness who is available and could naturally have been produced by him." (Citations omitted.) *State* v. *Scott,* 20 Conn. App. 513, 519–20, 568 A.2d 1048 (1989). Despite his involvement in this investigation, Hutchinson was not a witness the state would naturally produce. His testimony was either

cumulative, inferior to other testimony given or comparatively unimportant. See *State* v. *Brown,* 169 Conn. 692, 705, 364 A.2d 186 (1975). The defendant's argument that Cardillo's testimony compels the conclusion either that he perjured himself while testifying or Hutchinson suborned Cardillo's perjury when taking his statement has no basis in the record.

Further, because this was a trial to the court, the defendant cannot demonstrate that the trier of fact did not give the defendant the benefit of a negative inference as sought. Although there is no specific reference to such an inference in the oral memorandum of decision, neither was an articulation requested by the defendant. It is not impossible for the court to have given such negative inference and still have concluded as it did.

The defendant claims that a second specific failure of the court to give the defendant the benefit of the rule of adverse inference occurred as one officer testified as to the "furtive behavior" of the defendant and Cardillo after exiting their vehicles, while other officers were not asked by the state to buttress his claim, and were not asked whether that officer told them of the furtive behavior prior to trial.

Since all of the officers except Hutchinson did testify at trial, the defendant was not entitled to an adverse inference for the state's failure to call them. See *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 674–76, 165 A.2d 598 (1960); *State* v. *Williams,* 20 Conn. App. 263, 266, 565 A.2d 1365 (1989). Hutchinson, who was not part of the surveillance team on November 18, was not a witness the state would natually produce. As discussed previously, the state should not be expected to call a witness merely to buttress or to rebut a minor point.

## IV

The next claim made by the defendant is that the court erred in not finding a violation of its sequestration order when Inspector Lawrence Skinner, an investigator with the state's attorney office in Hartford, met with Cardillo for purposes of interviewing him during the trial.

Before trial began, the defendant asked that witnesses be sequestered.[5] Skinner, who sat at counsel table with the prosecuting attorney, was excluded. The defendant sought to preclude Skinner and other investigators from speaking to either Cardillo or Kehoe. The state's attorney indicated that he fully intended to have Skinner speak to both. The defendant's counsel then responded that he did not feel that anyone should convey any information to these witnesses as to what was happening in court.

During the state's case-in-chief, the testimony of several officers involved in the surveillance of Cardillo on November 18 was presented. On cross-examination one of these officers was asked about a prior surveillance of Cardillo on October 21, 1986. Cardillo's written statement indicated that Cardillo had transacted a drug deal with the defendant on October 21. The officer admitted, however, that he did not see the defendant

---

[5] Under General Statutes § 54-85a and Practice Book § 876, any party in a criminal matter is entitled upon motion to have the witnesses sequestered.

General Statutes § 54-85a provides: "In any criminal prosecution, the court, upon motion of the state or the defendant, shall cause any witness to be sequestered during the hearing on any issue or motion or any part of the trial of such prosecution in which he is not testifying."

Practice Book § 876 provides: "The judicial authority upon motion of the prosecuting authority or of the defendant shall cause any witness to be sequestered during the hearing on any issue or motion or during any part of the trial in which he is not testifying."

meet with Cardillo during the October 21 surveillance. Following that testimony, Skinner went to the correctional facility where Cardillo was being held, without the knowledge of the state's attorney, because he wanted to ascertain whether Cardillo was certain about the October 21 date. Skinner informed Cardillo that he was not at liberty to discuss testimony with him. Skinner then asked Cardillo if he was certain about the date. Cardillo asked Skinner if there was a problem at trial and Skinner replied that he was not at liberty to discuss it. Skinner then showed Cardillo the paragraph in the Kehoe and Sherbacow search warrants detailing the surveillance on October 21 and noted that "things didn't make sense to [him]." Cardillo then discussed the October and the alleged November drug deals.

The court found that its sequestration order had been neither directly nor indirectly violated.

Even if we assume arguendo that the court's order of sequestration was broadened to prohibit any witness, not merely from being in the courtroom when he is not testifying, but also from discussing testimony by any past or prospective witness; *State* v. *Scott,* 16 Conn. App. 172, 182, 547 A.2d 77 (1988); it is obvious from the court's ruling that it accepted Skinner's testimony that he did not inform Cardillo of any evidence at trial as credible. Skinner's testimony was uncontroverted. The record does not support the defendant's claim of a violation of the court's sequestration order.

V

Finally, the defendant claims that he was deprived of a fair trial because he was precluded from effectively cross-examining several key witnesses due to the court's failure to review, in camera, Skinner's notes

of the jail interview with Cardillo and its failure to sanction the state for a *Brady* violation. See *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

The defendant does not deny that he received the claimed exculpatory material, or that the court inspected the material before turning it over to counsel, but rather alleges that it was not disclosed in a timely fashion, i.e., when first requested by defense counsel or when first reviewed by the state's attorney.

The facts pertinent to this claim are as follows. On February 29, 1988, Skinner interviewed Cardillo. The following day, the defendant was notified of the meeting, and on March 2 the state gave the defendant a copy of Skinner's memorandum to the state's attorney in which Skinner summarized his meeting with Cardillo. The memorandum stated that, after Cardillo was asked if he was sure of the date of the October drug transaction and he was shown a copy of the search warrant affidavit, Cardillo told Skinner that October 21 was the wrong date, and that, although he did not know the exact date, he was sure the transaction had occurred the same day that he had signed easement papers in the defendant's office. The memorandum concluded by noting that the easement papers were located at the town clerk's office and were signed on October 30.

The defendant asked the court to mark Skinner's rough notes and review them in camera to see if they contained any *Brady* material. The state objected on the basis that the notes were privileged as attorney work product. The court denied the defendant's request and also denied his request for access to those notes. The memorandum was admitted into evidence.

The defendant was then allowed to question Skinner in connection with his sequestration claim as discussed

previously. The court ruled that Skinner's visit to Cardillo was within the scope of his duties as an inspector. It then referred to Practice Book § 746.[6]

Later in the trial, but before Cardillo had testified, the court ordered that Skinner's notes be produced, marked as a defense exhibit for identification only, and sealed.

During cross-examination, Cardillo was questioned extensively on his meeting with Skinner and on the alleged inconsistencies between his March, 1987 statement and his present testimony, particularly the change in the date of the October transaction. While cross-examining Cardillo, the defendant again requested Skinner's notes. The court ordered that the notes be unsealed and given to the defendant. The notes were marked as a defendant's exhibit. After reviewing the notes, the defendant moved for sanctions against the state, arguing that the notes contained *Brady* material and should have been disclosed to him sooner, as they might have been helpful in cross-examining Kehoe. The court denied his motion, and the defendant continued his cross-examination of Cardillo.

"To come within the strictures of *Brady* . . . it must appear (1) that the prosecution suppressed evidence after a request by the defense; (2) that the evidence was favorable to the defense and (3) that it was material."

---

[6] Practice Book § 746 provides: "Except for the substance of any exculpatory material contained herein, Sec. 740 does not authorize or require disclosure or inspection of:

"(1) Reports, memoranda or other internal documents made by a prosecuting authority or by law enforcement officers in connection with the investigation or prosecution of the case;

"(2) Statements made to prosecuting authorities or law enforcement officers except as provided in Sec. 748;

"(3) Legal research;

"(4) Records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions of a prosecuting authority."

*State* v. *Altrui,* 188 Conn. 161, 177, 448 A.2d 837 (1982); *State* v. *Daniels,* 13 Conn. App. 133, 137, 534 A.2d 1253 (1987). "Evidence known to the defendant or his counsel, or that is disclosed, even if during trial, is not considered suppressed as that term is used in *Brady.*" *State* v. *Dolphin,* 195 Conn. 444, 455–56, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985). Under the circumstances of this case, we fail to see how any of the these *Brady* requirements are met. Because no *Brady* violation occurred, the court properly denied the defendant's request for sanctions against the state.

Even if we assume arguendo that the defendant is correct in his assertion that he should have received the notes sooner, he has not demonstrated how he was harmed by the late disclosure. He received the memorandum days before either Kehoe or Cardillo testified, and received the notes while still cross-examining Cardillo, the witness they supposedly would have impeached. Further, the defendant's claim that receiving the notes late somehow interfered with his ability to impeach Kehoe on cross-examination is without merit. He did not seek to recall Kehoe or any other witness for further cross-examination.

There is no error.

In this opinion the other judges concurred.