STATE OF CONNECTICUT *v.* TOMMY BATTLE
(13256)

Dupont, C. J., and Foti and Freedman, Js.

Argued September 18—decision released November 28, 1995

*Elizabeth M. Inkster*, assistant public defender, for the appellant (defendant).

*Nancy L. Gillespie*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *David P. Gold*, supervisory assistant state's attorney, and *Dennis J. O'Connell*, legal intern, for the appellee (state).

FREEDMAN, J. The defendant appeals from a judgment of conviction, following a jury trial, of sexual assault in the first degree in violation of General Statutes (Rev. to 1987) § 53a-70,[1] sexual assault in the second degree in violation of General Statutes (Rev. to 1987) § 53a-71 (a) (1),[2] sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1)[3] and risk of injury to a child in violation of General Statutes

---

[1] General Statutes (Rev. to 1987) § 53a-70 (a) provides:"A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person." This is presently General Statutes § 53a-70 (a) (1).

[2] General Statutes (Rev. to 1987) § 53a-71 (a) provides in pertinent part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

[3] General Statutes § 53a-72a (a) provides in pertinent part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . ."

§ 53-21.[4] On appeal, the defendant claims that the trial court improperly (1) refused to give a "missing witness" instruction regarding the state's failure to call a certain witness and (2) denied the defendant's motion to exclude evidence under the constancy of accusation doctrine. The defendant also argues that his convictions of sexual assault in the first degree and sexual assault in the second degree violated his constitutional right against double jeopardy. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 1988, the victim,[5] then age eleven, lived with her mother, three brothers, two sisters, the defendant and occasionally the defendant's son. The defendant is the victim's great uncle. The defendant rented a portion of his apartment to the victim's mother and her family because she was having difficulty finding an apartment at that time.

The defendant began sexually molesting the victim approximately two months after she and her family moved in with him. This behavior included the defendant's rubbing his body against the victim's body and pulling the victim toward him despite her struggles to break free. On one occasion, the defendant walked into the bathroom when the victim was in the shower, pulled back the shower curtain and, despite the victim's protests, touched her breasts. On another occasion, the defendant went to the victim's room while she was sleeping, pulled down her shorts and underwear, forced

[4] General Statutes § 53-21 provides "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[5] In accordance with General Statutes § 54-86e, the names of the minor victim and her family are not used.

her legs apart and put his mouth and tongue on her vagina. On another occasion, the defendant again removed the victim's underwear, forced her legs apart, and penetrated her vagina both with his finger and his penis.

The victim and her family lived with the defendant until a fire in 1989 forced them to seek emergency housing elsewhere. Approximately two years after the incidents with the defendant, when the victim was thirteen years old, she had her first boyfriend. The victim's mother decided to take her to the Hill Health Center to obtain birth control pills for her. At this point, the victim recounted her allegations of abuse by the defendant, first to her mother's boyfriend and, on the next day, to a friend of hers. When the victim went to the Hill Health Center, she told the nurse who treated her about the abuse.

Additional facts will be set forth where relevant to a specific claim made by the defendant.

I

The defendant first argues that the trial court improperly refused to instruct the jury that it could draw an adverse inference from the state's failure to call the boyfriend of the victim's mother as a witness. The boyfriend was the first adult the victim told of the assaults by the defendant, which had occurred approximately two years previously.[6] The state argues that the defendant did not satisfy his burden of showing that the state would naturally produce the boyfriend as a witness. We agree with the state because any testimony given by the boyfriend would have been largely cumulative.

"The missing witness rule was stated in *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598

---

[6] The victim had told a cousin, then age twelve, about the abuse while it was occurring. The victim had asked her cousin not to tell anyone about it.

(1960). That rule provides that [t]he failure of a party to produce a witness who is in his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause. . . . Two requirements must be fulfilled before a party is entitled to a *Secondino* charge: the witness must be available, and he must be a witness whom the party would naturally produce." (Citation omitted; internal quotation marks omitted.) *State* v. *Fleming*, 36 Conn. App. 556, 568, 651 A.2d 1341, cert. denied, 233 Conn. 913, 659 A.2d 186 (1995). "A prospective witness whose testimony would be comparatively unimportant, cumulative or inferior to what has been offered, should be dispensed with on the grounds of expense and inconvenience, without the need for an adverse inference charge." *State* v. *Williams*, 20 Conn. App. 263, 266, 565 A.2d 1365 (1989). "Whether an absent witness has superior or peculiar information and whether an adverse inference can be drawn is a question of fact for the trier. . . . This court cannot reverse or modify the trial court's determinations of fact unless they are clearly erroneous." (Citation omitted.) Id. On the basis of the record before us, we cannot say that the trial court's decision not to give an adverse inference charge to the jury was clearly erroneous.

As stated previously, the boyfriend of the victim's mother was the first adult the victim told about the abuse by the defendant. The victim testified that she and her mother's boyfriend "were close" and that they "could talk about anything and [she] would always come to him for a problem." Although the boyfriend was not called as a witness at trial, the state produced numerous other constancy of accusation witnesses.[7]

---

[7] The constancy of accusation witnesses were permitted to testify following the court's denial of the defendant's motion to exclude constancy of accusation testimony.

Specifically, the victim testified that the day after she told her mother's boyfriend what had happened, she told a friend. The friend testified that, in the summer of 1990, she had a conversation with the victim in which the victim told her that the defendant had sex with the victim when the defendant was babysitting the victim.

A family and pediatric nurse practitioner who worked at the Hill Health Center testified that she saw the victim on July 19, 1990, in connection with the victim's appointment to obtain birth control pills. She testified that the victim told her during the appointment that she had been sexually abused by a great uncle while her family was living in his home. The victim told the nurse that she had had sexual intercourse with the defendant approximately twelve times.[8] The nurse recalled the victim's saying that she did not tell her mother of the abuse by the defendant while it was occurring because the defendant had threatened to throw the family out of the house if she did.

The victim's mother testified that she first learned of the victim's accusations from her boyfriend and another friend before she took the victim to the Hill Health Center. The victim eventually discussed the abuse with her mother. The victim's mother also testified that she told health care workers that the victim did not always tell the truth.

Detective Peter J. Marone, Jr., testified that on October 18, 1990, he was employed in the youth division of the New Haven police department and conducted an investigation into a complaint made by the victim. On that date, Marone interviewed the victim at her home, and the victim described to Marone the acts perpetrated on her by the defendant. The victim's mother, her mother's boyfriend, and some of the victim's siblings were

---

[8] The victim also told the nurse that she had had sexual intercourse once with her boyfriend.

present at the interview. The victim acted "embarrassed and shy" during this interview. The victim told Marone that the defendant had threatened to throw her family out of the house if she told anyone what he was doing to her. On October 22, 1990, the victim gave a formal tape-recorded statement to Marone at the New Haven police station, which was played for the jury. Approximately one month after the formal statement was made, the boyfriend of the victim's mother accompanied the victim to the police station so that she could review and sign her formal tape-recorded statement.

A social worker with the Coordinating Council for Children in Crisis testified that on October 25, 1990, the New Haven police department referred the victim's case to her. The social worker conducted a tape-recorded interview with the victim concerning her accusations of the defendant's actions. Several times during the interview, the victim became upset while recounting the sexual abuse. The tape was played for the jury.

The victim had told her cousin about the abuse while it was occurring.[9] The cousin, who was twelve at the time that the victim first told her of the sexual abuse, testified that she did not remember exactly what the victim had told her, but knew the victim had told her the defendant was "messing with her." The cousin also remembered the victim's asking her not to tell anyone because the defendant had threatened to throw them out of the house. Subsequently, around the time that the victim's mother was going to take the victim to the Hill Health Center, the victim told her cousin that the defendant had had sexual intercourse and oral sex with her and that, on one occasion, one of her younger sisters stood in the doorway while this occurred.

Finally, the court read a stipulation of counsel to the jury regarding what a caseworker for the department

---

[9] See footnote 6.

of children and youth services (department) would have testified to if she had been called as a witness. According to the stipulation, after receiving the referral from the Hill Health Center, the caseworker contacted the victim's mother, who reported that the victim "tells stories sometimes" but that she had no reason not to believe the accusations regarding the defendant. When the caseworker interviewed the victim on August 8, 1990, the victim reported that she had been molested by the defendant over a six month period in 1988 and 1989 while her family lived with him. The victim told the caseworker that the defendant threatened to kick the family out if she told anyone of the abuse. According to the caseworker's notes, the victim indicated that she had not told her mother of the abuse but had recently told a neighbor who told the victim's mother. She also said that two years previously she had told a friend of the abuse.

On the basis of the other constancy of accusation evidence, we cannot say that testimony by the boyfriend of the victim's mother would have added "peculiar or superior information" over that provided by the other witnesses. *State* v. *Williams*, supra, 20 Conn. App. 267. "Because there is no need to give a *Secondino* charge for a witness whose testimony would have been no more than cumulative"; id.; we conclude that the trial court properly refused to give a missing witness charge as to the state's failure to produce the boyfriend of the victim's mother.

II

The defendant next argues that the trial court improperly denied his motion to exclude evidence under the constancy of accusation doctrine. The defendant argues that the testimony of the victim's mother, the victim's cousin, Marone, the health center nurse, the social worker, and a friend of the victim, as well as the stipula-

tion with regard to the department caseworker and the victim's two tape-recorded statements given to Marone and to the social worker, should not come in under the constancy of accusation doctrine because that doctrine is "outmoded, anachronistic, gender biased and violates the guarantees of equal protection." The defendant also argues that the testimony lacked adequate "indicia of reliability" and "particularized guarantees of trustworthiness" necessary to satisfy constitutional standards. We disagree.

The defendant concedes that we are bound by that part of the Supreme Court's decision in *State* v. *Kelley*, 229 Conn. 557, 565–66, 643 A.2d 854 (1994), which held that the admission of constancy evidence does not violate a defendant's right to confrontation.[10] The defendant argues, however, that the state constitutional claim is reviewable on the merits. The defendant further argues that the federal equal protection claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[11] and *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973).[12] We conclude that these claims are likewise foreclosed by *State* v. *Kelley*, supra, 557.

[10] The defendant concedes that we are bound by *Kelley*, but goes on to argue that the subject testimony lacked adequate "indicia of reliability" and "particularized guarantees of trustworthiness" to satisfy his right to confrontation. We conclude that this claim is foreclosed by *State* v. *Kelley*, supra, 229 Conn. 565–66; see also *State* v. *Martin*, 38 Conn. App. 731, 737–38, 663 A.2d 1078 (1995). We also note that constancy of accusation evidence is a firmly rooted exception to the hearsay rule and, as such, satisfies the reliability requirement of the confrontation clause. *State* v. *Martin*, supra, 737; see *State* v. *Dabkowski*, 199 Conn. 193, 199–203, 506 A.2d 118 (1986).

[11] Pursuant to these cases, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

[12] According to the defendant, six months after he was sentenced in this case, the United States Supreme Court decided *J. E. B.* v. *Alabama ex rel. T.*

In *State* v. *Kelley*, supra, 229 Conn. 564, the defendant sought *Golding* review of his claim that the constancy of accusation doctrine is " 'outmoded, anachronistic and gender-biased' and violates his rights under article first, § 20, of the Connecticut constitution." With regard to the claim that the doctrine is outmoded and clearly anachronistic, the court noted that the defendant had not demonstrated this argument to be of constitutional dimension. Id. With regard to the claim that the constancy of accusation doctrine is gender biased and violated the defendant's rights under article first, § 20, of the Connecticut constitution, the court stated that "[a]lthough the constancy of accusation doctrine was adopted by this court in a case in which a female sexual assault victim had confided in a female friend . . . we have never restricted its application to female victims. . . . Because the doctrine would apply equally to male and female victims, we conclude that it is not gender biased and, therefore, does not violate the defendant's rights under article first, § 20, of the Connecticut constitution." (Citations omitted.) Id., 565; see also *State* v. *Martin*, 38 Conn. App. 731, 738–39, 663 A.2d 1078 (1995).

On the basis of the foregoing, we conclude that the defendant's state and federal[13] constitutional rights

---

*B.*, 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994), which recognized a male litigant's right to assert that different treatment of women violated fourteenth amendment guarantees. The defendant therefore argues that this claim is entitled to *Golding* review.

[13] Although *State* v. *Kelley*, supra, 229 Conn. 557, involved only a state constitutional claim, we conclude that it is dispositive of the federal claim as well. While the Connecticut constitution may provide greater protection than that provided under the federal constitution, "particularly when the distinctive language of our constitution calls for an independent construction"; *Daly* v. *DelPonte*, 225 Conn. 499, 513, 624 A.2d 876 (1993); it cannot afford lesser protection. See *Horton* v. *Meskill*, 172 Conn. 615, 639–53, 376 A.2d 359 (1977). "It is beyond debate that federal constitutional and statutory law establishes a *minimum* national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights." (Emphasis in original; internal quotation marks omitted.) *State* v. *Morales*, 232 Conn. 707, 716, 657 A.2d 585 (1995).

were not violated by the admission of the constancy of accusation evidence.

## III

Finally, the defendant argues that his convictions and separate sentences for sexual assault in the first degree and sexual assault in the second degree constitute double jeopardy under the federal and state constitutions. Specifically, the defendant argues that "the legislative history of the sexual assault statutes evidences a clear legislative intent to prohibit multiple punishments for sexual assault in the first and second degree." We disagree.

"Double jeopardy prohibits multiple punishments for the same offense. . . . Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . . [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision required proof of a fact which the other does not." (Citations omitted; internal quotation marks omitted.) *State* v. *DePastino*, 228 Conn. 552, 571–72, 638 A.2d 578 (1994); see *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

In *State* v. *Russell*, 25 Conn. App. 243, 248–52, 594 A.2d 1000, cert. denied, 220 Conn. 911, 597 A.2d 338 (1991), and *State* v. *Blackwell*, 20 Conn. App. 193, 195–98, 565 A.2d 549, cert. denied, 213 Conn. 810, 568 A.2d 794 (1989), we rejected claims identical to that of the defendant. The rationale in those cases was that "[t]he plain language of the two statutory sections indicates that while sexual assault in the first degree requires proof of force or threatened use of force, sexual assault

in the second degree does not. . . . Furthermore, in order to convict a defendant of sexual assault in the second degree, the state must show that the victim was under the age of sixteen. . . . The statute proscribing sexual assault in the first degree contains no similar requirement. . . . Application of the *Blockburger* test demonstrates that these are separate crimes for which the defendant could be prosecuted and punished without violating the prohibition against double jeopardy." (Internal quotation marks omitted.) *State* v. *Kulmac,* 230 Conn. 43, 69–70, 644 A.2d 887 (1994). The Supreme Court, recently citing *Russell* and *Blackwell* with approval, noted that "the legislative history of these statutes does not indicate that the legislature intended that these two statutes be classified as two nominally distinct crimes for which only one punishment could be imposed." (Internal quotation marks omitted.) *State* v. *DePastino,* supra, 228 Conn. 572. Accordingly, we conclude that the defendant's constitutional rights against double jeopardy were not violated.

The judgment is affirmed.

In this opinion the other judges concurred.