STATE OF CONNECTICUT *v.* CHARLES CHRISTIANO, SR.
(10587)

DUPONT, C. J., O'CONNELL and FREEDMAN, Js.

Argued September 15—decision released December 8, 1992

*Howard Lawrence,* with whom, on the brief, was *Lawrence S. Dressler,* law student intern, for the appellant (defendant).

*John A. East III,* deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Cara F. Eschuk,* deputy assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70. On appeal, the defendant claims that the trial court improperly (1) refused to admit evidence of the victim's prior sexual conduct, and (2) admitted the testimony of an expert witness. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. In June of 1989, the victim went to the Wolcott police and made a statement accusing the defendant, her foster father, of sexually abusing her over a four year period. At the time the victim, who is mildly retarded, made the statement she was twenty-one years old and continued to reside with the defendant's family with whom she had been placed when she was eight years old. In the statement, the victim claimed that during the four year period from September, 1985, until May, 1989, the defendant had forcibly and repeatedly raped her.

I

The defendant first claims that evidence of the victim's prior sexual conduct was admissible under Gen-

eral Statutes § 54-86f, commonly referred to as the rape shield statute.[1] Specifically, the defendant argues that the victim's prior sexual conduct was so relevant and probative as to be essential to the defense, and that the trial court's refusal to admit such evidence violated the defendant's constitutional rights to confront witnesses against him and to present witnesses in his own behalf. We disagree.

The defendant did not testify at trial. He, therefore, neither expressly denied having sexual intercourse with the victim nor asserted a defense of consent. In an effort to rebut evidence presented by the prosecution to prove the elements of the crime charged, the defendant made a motion to admit evidence of the victim's prior sexual conduct. Pursuant to the rape shield statute, the trial court held an in camera hearing during

[1] General Statutes § 54-86f provides: "ADMISSIBILITY OF EVIDENCE OF PRIOR SEXUAL CONDUCT. In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of prior sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

which the defendant, his wife, his son, and his daughter testified as to the victim's prior sexual conduct with other members of her foster family and with the victim's two natural brothers. The defendant offered this evidence of prior sexual conduct to explain a statement made by him that had been allowed into evidence as an admission and to show consciousness of guilt. That statement, made to the defendant's wife prior to trial, was: "You forgave Norman [the defendant's son], why can't you forgive me?" The defendant's motion to strike the statement was denied. The defendant then sought to use evidence of the victim's prior sexual conduct to demonstrate that the statement pertained to the motivation of the victim to accuse the defendant of sexual assault. Without such an explanation, the defendant claims that the jury would believe that the defendant and his son both had engaged in sexual relations with the victim. The trial court determined that this evidence was not relevant and denied the defendant's motion to introduce the evidence to show motivation for a false accusation or to show the victim's alleged pattern of sexual behavior within family settings.

General Statutes § 54-86 allows evidence of prior sexual conduct of a sexual assault victim only if it satisfies one of the four exceptions enumerated within the statute. *State* v. *Rothenberg*, 195 Conn. 253, 259–60, 487 A.2d 545 (1985); *State* v. *Williams*, 20 Conn. App. 263, 268, 565 A.2d 1365 (1989). The defendant contends that the victim's prior sexual history was admissible under the fourth exception. General Statutes § 54-86f (4) provides that "no evidence of the sexual conduct of the victim may be admissible unless such evidence is . . . otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights." Evidence of prior sexual conduct is admissible under this statute "only if it fulfills the requirements of the statute that its probative

value outweighs its prejudicial effect, within the context of the facts and circumstances of the case in which it arises." *State* v. *Butler,* 11 Conn. App. 673, 682, 529 A.2d 219, cert. denied, 205 Conn. 806, 531 A.2d 938 (1987); *State* v. *Cassidy,* 3 Conn. App. 374, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985).

If the evidence offered by the defendant is not relevant to a critical issue in the case, "the defendant's right to confront his accuser is not affected." *State* v. *Daniels,* 8 Conn. App. 190, 192, 512 A.2d 936 (1986); *State* v. *Cassidy,* supra, 384–85. It is a reasonable exercise of judicial discretion to exclude evidence "the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated on vital issues of the case." *State* v. *Ruffin,* 206 Conn. 678, 684, 539 A.2d 144 (1988).

The defendant claims that the victim's prior sexual history was relevant because her sexual behavior with other family members would have explained the defendant's statement by providing motivation for the victim to accuse the defendant falsely of sexual assault. The statement could have been viewed by the jury as an admission by the defendant that he had engaged in sexual relations with the victim. It does not, however, indicate whether the sexual relations were consensual or forcible. The defendant contends that after he made the statement the victim felt that she had no choice but to accuse the defendant falsely of forcing her to have sexual intercourse with him because of her prior sexual history. He claims that the victim could not admit to consensual intercourse because she would have been forced out of the defendant's household and that she could not deny sexual intercourse because she would not have been believed. The defendant further argues that if the jury knew of the victim's prior sexual

behavior, the jury could have inferred that the victim made the accusations "in order to excuse her undignified predicament."

The defendant's statement, however, had nothing to do with the victim's accusations. There was no direct evidence to indicate that the statement was made prior to the time the victim went to the police to accuse the defendant. We can infer that the statement was made after the victim had gone to the police station in June, 1989, because it was made at a second meeting conducted by a priest in a church attended by all of the family members, the defendant, and the victim. The first meeting at the church was held on July 12, 1989. The victim could not have known in June, 1989, that the defendant would later make a statement that could be interpreted as an admission by him that intercourse had occurred. It is, therefore, difficult to conclude that the defendant's statement provided any motivation for the victim to accuse the defendant falsely.

In ruling on the defendant's motion to admit the prior sexual history of the victim, the trial court found that evidence of prior sexual conduct was not so relevant and material to a critical issue that excluding it would violate the defendant's constitutional rights. The proffered testimony of Norman that the victim engaged in consensual sexual intercourse with him is not relevant to the victim's motive in allegedly falsely accusing the defendant of forcible sexual intercourse. Norman's testimony would not have been probative of the defendant's innocence. Furthermore, the defendant had other alternatives to elicit evidence of motivation by the victim falsely to accuse the defendant. Not only did the defendant have other means available to him to present motivation evidence, but he also utilized those means. The defendant cross-examined the victim extensively as to her possible motives for accus-

ing the defendant.[2] The defendant also presented witnesses who testified that the victim had an ulterior motive. In light of the limited probative value of the evidence to the critical issue in this case, and the defendant's opportunity to present testimony suggesting the victim's motivation to make a false accusation, the exclusion of the victim's prior sexual history was a proper exercise of discretion by the trial court and did not prejudice the defendant or deny him his constitutional rights to confront the witnesses against him and to present witnesses in his own behalf.

The defendant also contends that admission of the victim's prior sexual history would have established that the victim engaged in a pattern of sexual behavior within family settings. The testimony about sexual behavior that the defendant sought to admit was too remote in time to be relevant to the issue of whether the defendant forcibly compelled the victim to engage in sexual intercourse. The alleged sexual encounters between the victim and her natural and foster brothers occurred at least five years and as many as twelve years prior to the time the alleged sexual encounters began with the defendant. The encounters with her natural brothers occurred before the victim was eight years old and were nonconsensual. The encounters with her foster brothers occurred when the victim was twelve or thirteen and were alleged to have been consensual and infrequent. The remoteness in time and the young age of the victim when these events occurred negate their relevance. The victim's prior sexual history with family members, within the context and circumstances of this case, does not establish *any* pattern, much less a pattern of sexual behavior with family members, and, therefore, is irrelevant to the critical issue in this case

---

[2] The defendant did not try to admit the victim's prior sexual history during his cross-examination of the victim. Rather, the defendant waited until he began his defense.

of whether the defendant was guilty or not guilty pursuant to a substitute information that charged him with two counts of forcible sexual intercourse.

The defendant did not establish how the victim's prior sexual history was "so relevant and material" to the critical issue of whether the defendant sexually assaulted the victim that it should constitute an exception to the inadmissibility of evidence of prior sexual conduct as provided in General Statutes § 54-86f (4). The trial court correctly concluded that the victim's prior sexual conduct had no bearing on what occurred between the victim and the defendant or on the motivation of the victim to bring sexual assault charges. We conclude, therefore, that the trial court did not abuse its discretion in excluding this evidence, and that the defendant's constitutional rights were not violated.

## II

The defendant next claims that the trial court improperly admitted the testimony of a witness for the prosecution. Specifically, the defendant claims that the testimony of a clinical psychologist, Sidney Horowitz, was irrelevant, immaterial, prejudicial, and invaded the province of the jury. The defendant also claims that Horowitz' testimony about the victim's delay in reporting the sexual assaults was based on the symptoms and characteristics of a syndrome called child sexual abuse accommodation syndrome (CSAAS), and that the state did not establish the general scientific acceptance of this syndrome in the medical community. We conclude that the trial court did not abuse its discretion in admitting into evidence Horowitz' testimony.

A "trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions." *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986). The test for admissibility of expert testimony is whether "(1) the witness has a spe-

cial skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." Id.; see also State v. Spigarolo, 210 Conn. 359, 376, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989); State v. Watson, 26 Conn. App. 151, 153, 599 A.2d 385 (1991), cert. denied, 221 Conn. 907, 600 A.2d 1362 (1992).

In State v. Spigarolo, supra, the state presented a social worker to testify that it is not unusual for alleged abuse victims to tell inconsistent stories. The defendant objected on the grounds that the social worker "was not qualified to testify as she did and that the admission of her testimony violated [the defendant's] constitutional right to a jury trial because it usurped the jury's function of assessing the credibility of witnesses." Id. In sexual assault cases involving minors "the state may present expert opinion evidence that . . . behavior [such as inconsistencies, partial disclosures and recantations] . . . is common." Id., 377. The court held that "[t]his variety of expert testimony is admissible because the consequences of the unique trauma experienced by minor victims of sexual abuse are matters beyond the understanding of the average person." Id., 378. In reaching this conclusion, the court relied on a number of cases from other jurisdictions, including cases where the courts held as admissible, testimony given by a social worker or even a policeman, that sexually abused children often delay reporting incidents of sexual abuse. See State v. Sandberg, 406 N.W.2d 506, 511 (Minn. 1987); State v. Hicks, 148 Vt. 459, 461–62, 535 A.2d 776 (1987).

In State v. Watson, supra, the state presented a witness, a victim's advocate and counselor, to testify that it is common for victims to delay reporting a sexual assault. The trial court allowed the witness to testify

over the objection of the defendant who argued that the proper foundation had not been laid for the question, and, therefore, that the witness was not qualified to testify to the behavioral characteristics of sexual assault victims. The witness did not testify as to the delay in reporting by the particular victim, but only as to the delay in reporting by victims generally. The victim in the *Watson* case was an adult. The court found that "the witness possessed knowledge superior to that of the average layperson"; id., 154; and, therefore, "the trial court did not abuse its discretion in permitting the witness to testify as she did." Id., 155.

In the present case, the defendant, on cross-examination of the victim, sought to discredit her testimony by questioning her as to the nearly four year delay in bringing her accusations about him to the police. In an effort to bolster the credibility of the victim with regard to her failure to accuse the defendant promptly, the state presented Horowitz, a clinical psychologist who specializes in child and adolescent sexual abuse. After qualifying Horowitz as an expert, without objection from the defendant, the state questioned Horowitz about delays in disclosure by victims of sexual abuse. Horowitz testified that differences may exist in the method of disclosure by a victim when the alleged abuser is inside as opposed to outside the family. When Horowitz was asked what those differences might be, the defendant objected on the ground that the question was too broad because it lacked an age range. The state rephrased the question, narrowing the age range, and Horowitz continued testifying, without objection, about the typical occurrence of delayed disclosure in sexual abuse cases in general. He also answered several hypothetical questions, again without objection, about delayed disclosure by victims in situations similar to that of the victim in the present

case, as well as questions about the effect that the mental capacity of a victim and the frequency of the abuse have on a victim.

Upon further examination, Horowitz testified as to how the age of the victim at the time of the abuse and the relationship between the victim and abuser affect when the victim discloses the abuse. During this portion of Horowitz' testimony, the defendant made only a few objections, which were limited to the age range used in the hypotheticals, any references to the department of children and youth services, and the lack of any mention of the use of physical force.[3] Horowitz then testified, without objection, to the effect of forcible intercourse and implied physical threat or harm in a quasi-parental relationship on delay in disclosure by victims. Horowitz also testified, without objection, about the difficulty of disclosure for victims in a family setting even when they are given an opportunity.

The defendant also claims that Horowitz' opinion about the behavioral patterns of sexual abuse victims in delaying the reporting of abuse was based on the characteristics of CSAAS, and that the state did not establish the general scientific acceptance of CSAAS in the medical community. This claim was not made at trial. Furthermore, nowhere in the transcript does Horowitz specifically mention CSAAS, nor does he claim he was basing his testimony on CSAAS. The only reference to CSAAS is an oblique remark by Horowitz to research by David Finkelhor, an expert in that area. Horowitz' testimony was primarily based on his own experience and clinical observations.[4]

---

[3] The state rephrased the questions mentioning the department of children and youth services, and the trial court overruled the objection to the question that did not mention the use of physical force.

[4] Even though the majority of jurisdictions do not admit CSAAS testimony to prove that an abuse has actually occurred; see *Bussey* v. *Commonwealth*, 697 S.W.2d 139 (Ky. 1985); *People* v. *Beckley*, 434 Mich. 691, 456

The state offered Horowitz' testimony for the rehabilitative purpose of explaining the victim's delay in disclosing the abuse, and the defendant did not object at trial to this aspect of Horowitz' testimony.[5] The principles of *Spigarolo* and *Watson*, as applied to the evidence presented here, lead us to conclude that the trial court could reasonably have found that the expert witness possessed special knowledge about the common characteristic of delay in disclosing sexual abuse in the family context, that this special knowledge was not generally known to the average person, and that it was relevant and material to the jury in performing its function. The essence of the Horowitz' testimony was beyond the ken of the average juror and, rather than usurping the jury's function of assessing the credi-

---

N.W.2d 391 (1990); *State* v. *Schimpf,* 782 S.W.2d 186 (Tenn. Crim. App. 1989); an overwhelming number of jurisdictions allow testimony based on CSAAS when it is offered to rehabilitate a witness. See *Bostic* v. *State,* 772 P.2d 1089 (Alaska Ct. App. 1989); *People* v. *Gray,* 187 Cal. App. 3d 213, 231 Cal. Rptr. 658 (1986); *State* v. *J. Q.,* 252 N.J. Super. 11, 599 A.2d 172 (App. Div. 1991), cert. granted, 127 N.J. 562, 606 A.2d 372 (1992); *State* v. *Cleveland,* 58 Wash. App. 634, 794 P.2d 546, cert. denied, 115 Wash. 2d 1029, 803 P.2d 324 (1990), cert. denied, U.S. , 111 S. Ct. 1415, 113 L. Ed. 2d 468 (1991). Connecticut has not specifically ruled on the admissibility of CSAAS, either for substantive or other purposes, and we do not do so in view of our review of the transcript that indicates that Horowitz' testimony was not based on the syndrome.

[5] Moreover, on cross-examination, the defendant asked two questions regarding delayed disclosure by sexual abuse victims.

"Defense Counsel: Okay. And it's not unusual to have a case of a child between the age of thirteen and sixteen report that having—been sexually abused or having sexual contact with a foster father for a period of a number of years, like five or ten years, before disclosure; is that right?

"Dr. Horowitz: That has occurred.

"Defense Counsel: Okay. Now, directing your attention to sexual intercourse or sexual abuse happening to a foster girl when she's seventeen years and ten or eleven months or eighteen years, starting at that age and there's no disclosure until the young lady is twenty-one and a half, have you ever come across that type situation before where it started at seventeen years and eleven months, eighteen years and went to twenty-one and a half?

"Dr. Horowitz: Not specifically that way but beginning at around seventeen or eighteen and disclosure was made at thirty-five."

bility of the victim, it provided the jurors with a relevant insight into the victim's behavior that they might not otherwise bring to its evaluation of the victim's credibility. We conclude, therefore, that the trial court did not abuse its discretion in permitting Horowitz to testify as he did.

The judgment is affirmed.

In this opinion the other judges concurred.