STATE OF CONNECTICUT *v* . CHARLES F. CHRISTIANO, SR.
(14692)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and KATZ, Js.

Argued September 29, 1993—decision released February 8, 1994

*Lawrence S. Dressler,* with whom, on the brief, were *W. Paul Flynn* and *Howard Lawrence,* for the appellant (defendant).

*John A. East III,* deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Cara F. Eschuk,* assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant, Charles Christiano, Sr., was convicted after a jury trial of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70.[1] He appealed from the judgment of conviction to the Appellate Court, which affirmed the judgment of conviction. *State* v. *Christiano,* 29 Conn. App. 642, 617 A.2d 470 (1992). We granted the defendant's petition for certification to appeal limited to four issues involving the admissibility of expert testimony and of evidence of the victim's prior sexual conduct.[2] We affirm the judgment of the Appellate Court.

---

[1] General Statutes § 53a-70 provides in relevant part: "SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY . . . . (a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] We certified the following questions for review: "(1) Did the Appellate Court correctly decide that the defendant's right to confrontation was not violated when the trial court refused to admit evidence of the complainant's prior sexual conduct? (2) Did the Appellate Court correctly decide that evidence of the complainant's prior sexual behavior was not admissible to show a pattern of conduct of a particular mode of consensual sexual relationships within family settings? (3) Did the Appellate Court correctly examine the record and determine that the testimony of Dr. Horowitz was not evidence of child sexual abuse accommodation syndrome that was being offered to identify the complainant as suffering from child sexual abuse accommodation syndrome, to bolster the credibility of the complainant, to identify the defendant as fitting a particular criminal profile, and as evidence of prior uncharged crimes? (4) Did the Appellate Court correctly decline to address the issue of whether the prior sexual conduct of the complainant should have been admitted to show that the defendant was not the source of the complainant's psychological disease, i.e., child sexual abuse accommodation syndrome?" *State* v. *Christiano,* 225 Conn. 906, 621 A.2d 288 (1993).

The defendant was charged with two counts of sexual assault in the first degree: one count for forcible fellatio; and the other for forcible vaginal intercourse. Both of these assaults were alleged to have occurred between September 30, 1986, and May 31, 1989. At the beginning of this period, the victim was eighteen years and eleven months old.

The jury could have reasonably found the following facts. The victim, who is mildly retarded, was placed in the defendant's home as a foster child when she was eight years old. She continued to reside there until she was twenty-one when, in June, 1989, she went to the Wolcott police and made a statement accusing the defendant, her foster father, of having sexually abused her during the previous four years.

These assaults occurred approximately twice per week during the four year period from September, 1985, until May, 1989. There was a similar pattern to the assaults. Each occurred in the family home when the defendant and the victim were the only ones at home, and each involved both forcible fellatio and forcible vaginal intercourse.

The two specific incidents that were the basis of the conviction occurred approximately thirty days apart in March and April, 1989. These assaults began when the defendant pulled the victim into his bedroom. Once there, the defendant prevented the victim from escaping by means of his superior size and strength, and forced her to perform fellatio and to engage in vaginal intercourse. The defendant threatened to eject the victim from the family home if she disclosed the assaults to anyone. The victim was twenty-one years old when these incidents occurred.

I

We first address the certified question of the admissibility of certain expert testimony introduced by the

state. The defendant claims that the Appellate Court incorrectly determined[3] that his right to confrontation under the sixth amendment of the United States constitution, as applied to the states through the due process clause of the fourteenth amendment,[4] was not violated when the trial court admitted expert testimony on child sexual abuse accommodation syndrome (CSAAS). He argues that the expert testimony at trial specifically identified the victim as suffering from CSAAS. This testimony, the defendant asserts, improperly: (1) enhanced the credibility of the victim; (2) identified the defendant as fitting a particular criminal profile; and (3) evidenced crimes with which the defendant had not been charged. We disagree.

The following facts are relevant to this claim. During the defendant's cross-examination of the victim, he sought to impeach her credibility by questioning her prolonged delay in bringing charges against him. In response to this impeachment, the state offered the testimony of Sidney Horowitz, a clinical psychologist who specializes in treating sexually abused children and adolescents. The state asked Horowitz hypothetical questions concerning delays by victims in disclosing sexual abuse. Horowitz testified that victims of sexual abuse are often reluctant to disclose such abuse to authorities. Horowitz also answered several questions about delay in disclosure by hypothetical victims in situations similar to that of the victim. These questions made no specific reference to the victim. Horowitz also indicated that he had not examined the victim, and was not testifying as to the specifics of her case. Horowitz

---

[3] "In an appeal following certification, the focus of our review is not the actions of the trial court, but the actions of the Appellate Court." (Internal quotation marks omitted.) *Cahn* v. *Cahn,* 225 Conn. 666, 671, 626 A.2d 296 (1993); *Essex Leasing, Inc.* v. *Zoning Board of Appeals,* 206 Conn. 595, 599, 539 A.2d 101 (1988).

[4] See *Pointer* v. *Texas,* 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

testified to the effects upon the disclosure of sexual abuse of such factors as the age and mental capacity of typical victims, as well as the effects of the existence of a parental or quasi-parental relationship between perpetrators and victims of abuse.

Although the defendant claims that Horowitz' testimony concerning the delay by sexual abuse victims in reporting abuse was based on CSAAS, the defendant did not object to Horowitz' testimony on those grounds at trial. Further, Horowitz did not claim that his testimony was based on CSAAS; indeed, he never specifically mentioned CSAAS during his testimony. The Appellate Court noted that the only reference to CSAAS by Horowitz was "an oblique remark by Horowitz to research by David Finkelhor, an expert in that area." *State* v. *Christiano,* supra, 652.

A defendant's right to confront witnesses is not absolute and is subject to reasonable limitation. See *State* v. *Thompson,* 191 Conn. 146, 148, 463 A.2d 611 (1983). The admissibility of opinion testimony of expert witnesses is a matter within the discretion of the trial court. *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986). "Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *Borrelli,* 227 Conn. 153, 165, 629 A.2d 1105 (1993); *State* v. *Spigarolo,* 210 Conn. 359, 376, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989).

Horowitz' testimony was offered to rehabilitate the victim's credibility, which had been impeached by cross-examination regarding her delay in disclosing the conduct of the defendant. On the basis of Horowitz' testi-

mony, the jury could reasonably have found that the victim's delay in disclosure was consistent with the rest of her testimony of sexual abuse. Horowitz' testimony enabled the jury to find that, if the victim had been subjected to sexual abuse, such a finding was not necessarily inconsistent with the delay by the victim in complaining of that abuse.[5]

Reviewing this claim in its entirety, the Appellate Court concluded that Horowitz had not testified about CSAAS.[6] It concluded further that the trial court could reasonably have found that Horowitz possessed special knowledge concerning delay in disclosure by sexual abuse victims in family settings, that this special knowledge was not generally known by the average person, and that it was relevant and material to the performance of the jury's function of gauging the credibility of the victim.

In an analogous context, we held that expert testimony concerning battered woman's syndrome is admissible to explain deviations between a victim's statement to the police and a subsequent recantation of that statement by the victim. *State* v. *Borrelli,* supra, 172–74. The Appellate Court concluded that it was within the discretion of the trial court to admit Horowitz' testi-

---

[5] We note, however, that in situations such as this, when an expert is testifying to hypothetical situations in which a victim has been sexually abused, it is advisable for the trial court to give a cautionary instruction to the effect that the expert testimony is not offered to prove that the defendant actually committed the specific abusive acts in question, but only to aid the jury in gauging the victim's credibility, by showing that the victim's delay in reporting the sexual abuse was not necessarily inconsistent with such abuse having taken place. Cf. *State* v. *Harman,* 198 Conn. 124, 137 n.9, 502 A.2d 381 (1985).

[6] Because Horowitz did not testify to the specifics of CSAAS, we do not decide under what circumstances testimony expressly premised on CSAAS might be admissible. The Appellate Court noted that many other jurisdictions permit testimony based on CSAAS to rehabilitate a witness. See *State* v. *Christiano,* 29 Conn. App. 642, 652–53 n.4, 617 A.2d 470 (1992), and cases cited therein.

mony. *State* v. *Borrelli,* supra, supports that conclusion, and our review of the record indicates no reason to disturb it.

## II

We next consider the three certified questions concerning the admissibility of evidence of prior sexual conduct of the victim. The defendant claims that the Appellate Court incorrectly concluded that certain evidence of the victim's prior sexual conduct was inadmissible at trial. He argues that this conclusion was incorrect because evidence of sexual conduct was: (1) admissible pursuant to General Statutes § 54-86f (1)[7] in order to show that the defendant was not the source of the psychological disease from which the victim was suffering; (2) so relevant and material that its exclusion violated his right to confrontation under the sixth

[7] General Statutes § 54-86f provides: "ADMISSIBILITY OF EVIDENCE OF SEXUAL CONDUCT. In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

amendment as applied to the states though the due process clause of the fourteenth amendment of the United States constitution and was therefore admissible under § 54-86f (4); and (3) admissible pursuant to § 54-86f (4) in order to rebut the testimony of Horowitz because it would have shown other possible causes of the delay by the victim in reporting the abuse. We disagree with the defendant. Each of these issues will be treated seriatim.

## A

We first address the issue of the admissibility of evidence of certain prior sexual conduct of the victim under the "source of . . . disease" exception of § 54-86f, commonly known as the "rape shield" statute. See footnote 7. The defendant argues that the victim was suffering from CSAAS, and that CSAAS is a "disease" within the meaning of subdivision (1) of the rape shield statute. He argues that the exclusion of this evidence was reversible error. We disagree.

The defendant failed to object to the exclusion of the evidence of prior sexual conduct of the victim on these grounds. Appellate review of evidentiary rulings is ordinarily limited to the specific legal issue raised by the objection of trial counsel. See *State* v. *Rothenberg,* 195 Conn. 253, 263, 487 A.2d 545 (1985). The purpose of requiring trial counsel to object properly is not merely formal: it serves to alert the trial court to purported error while there is time to correct it without ordering a retrial. Id. By failing to object on these grounds, the defendant has failed to preserve this claim. *State* v. *Couture,* 194 Conn. 530, 553–54, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); see also Practice Book §§ 288 and 4185.[8] We, therefore, decline to review it.

---

[8] Practice Book § 288, as effective in 1991, provided: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds

## B

We next address the defendant's claim that the Appellate Court improperly upheld the trial court's exclusion of evidence of certain prior sexual conduct of the victim in violation of the defendant's right to confrontation. He argues that the excluded evidence was so relevant and probative as to be essential to his defense, and, therefore, its exclusion violated his right of confrontation[9] under the sixth amendment to the

upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had. Argument upon such objection shall not be made by either party unless the court requests it and, if made, must be brief and to the point. An exception to the ruling must be taken in order to make it a ground of appeal."

Practice Book § 288 has been amended, effective October 1, 1993, by eliminating the exception requirement contained in the final sentence quoted above.

Practice Book § 4185 provides: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same."

[9] The defendant argues that his right of confrontation was improperly restricted by the exclusion of evidence of the victim's prior sexual conduct. The defendant did not seek to introduce evidence of the victim's prior sexual conduct during his extensive cross-examination of her, preferring to introduce the evidence in rebuttal. His claim is more accurately characterized as one involving the right to present a defense under the due process clause of the fourteenth amendment, rather than a confrontation claim under the sixth amendment, which essentially secures the right to cross-examination of witnesses. Because our analysis in this particular fact-bound instance would be the same under either a confrontation or due process

United States constitution as made applicable to the states by the due process clause of the fourteenth amendment,[10] by denying him the constitutionally irreducible minimum of cross-examination into matters affecting the reliability and credibility of the state's witnesses. We disagree.

The following facts are relevant to this claim. During trial, Kathleen Christiano, the wife of a first cousin of the defendant, testified for the state that she had arranged a meeting among members of the defendant's family at St. Vincent Ferrer Church in Naugatuck. At this meeting, the victim confronted the defendant with charges of sexual abuse. Kathleen Christiano testified that, although the defendant denied the accusations of the victim at this meeting, at one point he stated to his wife: "[Y]ou forgave Norman for a sexual act with [the victim] and why can't you forgive me?"

The defendant sought to introduce evidence of the victim's prior sexual conduct to explain this admission. The defendant claimed that evidence of consensual sexual relations between the victim and others was relevant and material to a critical issue in the case, namely, consent by the victim to sexual intercourse with the defendant. Specifically, during a hearing outside the presence of the jury, the defendant made an offer of proof as to three distinct episodes of alleged sexual conduct by the victim. These episodes were: (1) consensual sexual intercourse and fellatio between the victim and her foster brothers, Norman Christiano and Charles Christiano, Jr., when the victim was approxi-

claim, we analyze his claim under the applicable law of confrontation. See *State* v. *Cassidy*, 3 Conn. App. 374, 380–81, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985).

[10] We note that the defendant made a single reference to his right to confrontation under both the federal and the state constitutions at one place in his brief. He has not provided any independent analysis of his state constitutional claim. We therefore decline to review it. *State* v. *Joly*, 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991).

mately eleven or twelve years old; (2) sexual abuse of the victim by her natural brothers when she was eight years old or younger; and (3) various sexual encounters between the victim and workers at her place of employment.

The defendant's offer of proof consisted of testimony from four persons. Norman Christiano, the defendant's son, testified that when he was thirteen or fourteen years old he had engaged in consensual sexual intercourse and consensual fellatio with the victim on approximately twelve occasions. He testified that, on one occasion, his sister, Stacey Christiano, discovered the victim and him engaged in sexual relations. He also testified that the victim had engaged in sexual intercourse with his older brother, Charles Christiano, Jr. These episodes of sexual activity occurred when the victim was eleven or twelve years old.

Doris Christiano, the wife of the defendant, testified that the victim told her that she had been sexually abused by her natural brothers prior to having been placed in the Christianos' home by the department of children and youth services. This period of sexual abuse occurred when the victim was eight years old or younger. Doris Christiano further testified that Stacey Christiano had informed her of the incident between the victim and Norman Christiano. She also testified that the victim had told her that she was dating and having sexual intercourse with a married man. At the time of this statement, the victim was approximately twenty years old.

Stacey Christiano, an adopted daughter of the defendant, testified that she had seen the victim having sexual intercourse with Norman Christiano when the victim was eleven years old. She also testified that the victim had a reputation for being promiscuous and had engaged in sexual intercourse or flirtatious

behavior with many men. Specifically, Stacey Christiano testified that: (1) she had witnessed the victim engaged in sexual conduct with a boy named Tyler when the victim was approximately eleven; (2) she had witnessed the victim engaged in sexual conduct during working hours with an employee of the restaurant at which they both worked when the victim was approximately nineteen years old; (3) others had told her that the victim was promiscuous; and (4) the victim had the reputation of dating older and divorced men.

During this hearing outside the presence of the jury, the defendant testified that he had never had sexual relations of any kind with the victim. He also indicated that he did not remember asking his wife for forgiveness at the church meeting. The defendant did not testify before the jury.

The trial court ruled that all of the proffered evidence was inadmissible. It determined that this evidence was not relevant and was barred by the rape shield statute. The Appellate Court affirmed, reasoning that "[t]he defendant did not establish how the victim's prior sexual history was 'so relevant and material' to the critical issue of whether the defendant sexually assaulted the victim that it should constitute an exception to the inadmissibility of evidence of prior sexual conduct as provided in General Statutes § 54-86f (4)." *State* v. *Christiano,* 29 Conn. App. 642, 649, 617 A.2d 470 (1992).

The defendant argues that this evidence was admissible because it was relevant and material to a critical issue in the case: consent by the victim to sexual intercourse with the defendant. He argues that evidence of consensual sexual intercourse by the victim with others was admissible to explain the context of his admission to his wife and to show a pattern of consensual sexual relations between the victim and family members. Had

the jury heard evidence that the victim had engaged in consensual sexual intercourse with other family members, he argues, it could have inferred that sexual intercourse between himself and the victim had also been consensual. Thus, although the defendant acknowledges that, during his offer of proof, he expressly and repeatedly denied having had sexual intercourse with the victim, he asserts that consent was a critical issue in the case, because lack of consent is embodied within the proof of force or threat of force required under § 53a-70 (a), the statute under which he was charged, and is therefore *always* a critical issue in any prosecution thereunder. His argument, therefore, reduces to the following syllogism: § 53a-70 (a) (1) requires proof of force or threat of force; such proof necessarily implies the element of lack of consent in the charged sexual conduct between the defendant and the victim; ergo, lack of such consent is always a "critical issue" within the meaning of § 54-86f (4). This argument is without merit in a prosecution under § 53a-70 (a) (1).

The rape shield statute excludes evidence of prior sexual conduct of the victim of a sexual assault, unless one of the statutory exceptions is satisfied. *State* v. *Rinaldi*, 220 Conn. 345, 354, 599 A.2d 1 (1991); *State* v. *Rothenberg*, supra, 259–60; *State* v. *Williams*, 20 Conn. App. 263, 268, 565 A.2d 1365 (1989). The statute was "enacted specifically to bar or limit the use of prior sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material. Berger, 'Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom,' 77 Colum. L. Rev. 1, 56–57 (1977). Our legislature has determined that, except in specific instances, and taking the defendant's constitutional rights into account, evidence of prior sexual conduct is to be excluded for policy purposes. Some of these policies include protecting the victim's sexual privacy

and shielding her from undue harassment, encouraging reports of sexual assault, and enabling the victim to testify in court with less fear of embarrassment. See id., 54. Other policies promoted by the law include avoiding prejudice to the victim, jury confusion and waste of time on collateral matters. Id., 56." *State* v. *Cassidy,* 3 Conn. App. 374, 379, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985).

Although the state's interests in limiting the admissibility of this type of evidence are substantial, they cannot by themselves outweigh the defendant's competing constitutional interests. Id.; see also *Davis* v. *Alaska,* 415 U.S. 308, 320, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). The determination of whether the state's interests in excluding evidence must yield to those interests of the defendant is determined by the facts and circumstances of the particular case. See, e.g., *Chambers* v. *Mississippi,* 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *State* v. *Mastropetre,* 175 Conn. 512, 521, 400 A.2d 276 (1978). "[T]he right to confront and cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers* v. *Mississippi,* supra, 295; see also *State* v. *Vitale,* 197 Conn. 396, 401, 497 A.2d 956 (1985). Such an interest includes the trial court's "right, indeed, duty, to exclude irrelevant evidence." *State* v. *Mastropetre,* supra; *State* v. *Talton,* 197 Conn. 280, 283–85, 497 A.2d 35 (1985).

Subdivision (3) of § 54-86f governs the admissibility of evidence of prior sexual conduct of a victim in connection with the defense of consent. It provides in relevant part: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is . . . (3) any evidence of *sexual conduct with the defendant* offered

by the defendant on the issue of consent by the victim, *when consent is raised as a defense by the defendant* . . . ." (Emphasis added.)

Subdivision (4) of the rape shield statute codifies constitutional principles. It provides in relevant part: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is . . . (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights." General Statutes § 54-86f (4).

The defendant's argument relies on an acrobatic leap in statutory interpretation, namely, a leap over subdivision (3) to subdivision (4), as if subdivision (3) did not exist. He acknowledges that he did not raise consent as a defense at trial. The plain language of subdivision (3) of the rape shield statute requires that the defendant raise the defense of consent before evidence of sexual conduct of the victim is admissible. Even then, it is only "evidence of sexual conduct *with the defendant*," not with others, that is admissible under subdivision (3). (Emphasis added.)

The defendant's argument that consensual sexual conduct with others is always admissible under subdivision (4) when the charge involves nonconsensual sexual intercourse would render superfluous the limitations of subdivision (3). Under the defendant's argument, whenever nonconsensual sexual conduct is part of the state's proof, the defendant would be entitled to introduce consensual sexual conduct of the victim with others, not with the defendant, and irrespective of whether the defendant claimed that the charged conduct was consensual rather than forceful. Moreover, under the defendant's argument, the limitations embodied in subdivision (3)—prior sexual conduct with the

defendant, and consent raised as a defense—would have no application whatsoever. This result follows because in a case involving a sexual assault charge that *did not* involve nonconsensual conduct as an element; see, e.g., General Statutes § 53a-70 (a) (2);[11] consent could not be raised by the defendant as a defense, and, according to the defendant, in a case involving a sexual assault charge that *did* involve nonconsensual conduct, consensual conduct with others would always be admissible. Thus, were we to accept the reasoning of the defendant, subdivision (3) of the rape shield statute would be swallowed by subdivision (4). As a general rule of statutory interpretation, we will not read a statute in such a way as to render a portion of it superfluous. *Peck* v. *Jacquemin,* 196 Conn. 53, 66, 491 A.2d 1043 (1985); see also *Gifford* v. *Freedom of Information Commission,* 227 Conn. 641, 661, 631 A.2d 252 (1993).

The defendant's argument would also run contrary to the purposes of and policies advanced by the statute. See *State* v. *Cassidy,* supra, 379. If, as the defendant posits, admissibility of evidence of the victim's consensual sexual conduct with others is constitutionally required pursuant to subdivision (4), there would be little, if anything, left of those policies. We decline to read the statute so as to render meaningless the purposes and policies that prompted the legislature to enact it.

As the Appellate Court noted, moreover, the defendant had available to him other means to question the victim's credibility. The defendant cross-examined the victim extensively as to her possible motives for accusing him. The defendant also presented witnesses who

[11] General Statutes § 53a-70 (a) (2) provides: "SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with a person under thirteen years of age . . . ."

testified that the victim had ulterior motives in bringing charges against him. The Appellate Court concluded that the trial court acted within its proper discretion when it excluded evidence of prior sexual conduct of the victim offered by the defendant. Further, it properly concluded that it did not prejudice the defendant or deny him his constitutional rights to confront the witnesses against him and to present witnesses in his own behalf. We see no reason to disturb those conclusions.

## C

The final claim raised by the defendant is that certain evidence of prior sexual conduct of the victim with family members was admissible to rebut the testimony of Horowitz. He argues that such evidence was admissible under subdivision (4) of the rape shield statute because it would have provided an alternate explanation for the delay by the victim in reporting the abuse, consistent with Horowitz' testimony. Specifically, he argues that the behavioral characteristics identified by Horowitz that could cause victims to delay reporting sexual abuse could have been caused by sexual abuse by persons other than a parent. He argues that the evidence of the victim's sexual abuse by her natural brothers when she was approximately eight years old, and evidence of the sexual relations between the victim and her foster brothers when she was approximately eleven years old, provided an alternative explanation of the victim's delay in reporting that abuse. He therefore argues that the failure to admit that evidence to rebut Horowitz' testimony violated his confrontation rights. We disagree.

In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury "facts from which the jurors, as the sole triers of fact and

credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis* v. *Alaska,* supra, 318; *State* v. *Lewis,* 220 Conn. 602, 621, 600 A.2d 1330 (1991). When defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. *Chambers* v. *Mississippi,* supra, 289–90. A defendant is, however, bound by the rules of evidence in presenting a defense. *State* v. *Kelly,* 208 Conn. 365, 375–76, 545 A.2d 1048 (1988). Although exclusionary rules of evidence cannot be applied "mechanistically" to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. *Chambers* v. *Mississippi,* supra, 302. If the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence was properly excluded. *State* v. *Mastropetre,* supra, 517; *State* v. *Cassidy,* supra, 383. "As a general principle, evidence is relevant if it has a tendency to establish the existence of a material fact. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable." (Internal quotation marks omitted.) *State* v. *Cassidy,* supra.

In the present case, the Appellate Court correctly concluded that the trial court had properly excluded the proffered evidence of prior sexual conduct of the victim with family members to rebut Horowitz' testimony. The substance of Horowitz' testimony concerned factors that would cause a sexually abused child to delay reporting that abuse when the abuser was a parent or authority figure. He testified to the typical relationship between a foster father and a child. He testified that it is difficult for victims of sexual assault to combat an abuser when the abuser is a parent or a trusted adult

in their environment. He also testified to feelings of helplessness on the part of a victim when the abuser is a father figure. Thus, the thrust of Horowitz' testimony concerned the delay of disclosure of abuse of victims by parents or those in positions of parental authority.

The proffered evidence of sexual conduct between the victim and other family members concerned evidence of sexual abuse of the victim by her natural brothers when she was eight years old or younger, and sexual intercourse between the victim and her foster brothers when she was approximately eleven or twelve and they were slightly older. Horowitz' testimony did not address these situations. A situation in which a very young girl is being sexually abused by her equally young brothers or foster brothers is not analogous to the situation described by Horowitz, in which a victim delays disclosing abuse because of the power exerted by an abuser who is a parent, or one who is exercising parental authority. The proffered evidence was properly excluded as irrelevant.

The judgment of the Appellate Court is affirmed.

In this opinion PETERS, C. J., CALLAHAN and KATZ, Js., concurred.

BERDON, J., concurring. I merely wish to point out that the defendant did not object to the hypothetical questions posed to the expert witness Sidney Horowitz by the state, and Horowitz repeatedly indicated that his opinion was based upon his personal clinical experience and not upon his observation of the victim.